IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE FIRST LIBERTY INSURANCE CORPORATION, | : |
| Plaintiff, | : |
| | : CIVIL ACTION |
| v. | : |
| | : NO. 12cv06823 |
| APRIL WALKER, et al. | : |
| Defendants. | : |

MEMORANDUM

YOHN, J.  November 5, 2013

This action arises out of a neighborhood dispute among residents at the Neshaminy Hills Camp Association ("Neshaminy Hills"). Defendants Alan and Joy Franklin ("the Franklins") brought two separate actions in state court against their neighbor, April Walker ("Walker")[1], for damage to their property. Plaintiff, First Liberty Insurance Corporation ("First Liberty"), filed this suit seeking a declaratory judgment as to its duty to defend and indemnify Walker. Before me is First Liberty's motion for summary judgment, Walker's response, and First Liberty's reply. For the following reasons, First Liberty's motion for summary judgment will be granted.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

**A. Procedural History**

On December 6, 2012, First Liberty filed a complaint with this court seeking a declaratory judgment that First Liberty has no duty to defend or indemnify Walker against complaints filed by the Franklins in Bucks County, Pennsylvania. On January 9, 2013, the Franklins filed an answer. On January 30, 2013, Walker filed an answer with counterclaim against First Liberty. On February 6, 2013, First Liberty moved to dismiss Walker's

---

[1] Throughout the record, April Walker is also referred to as April Walker-Spross and April Spross. This memorandum adopts the name as listed on the court docket, April Walker.

counterclaim, which was granted by the court on March 7, 2013. On March 15, 2013, defendants Neshaminy Hills, Gordon and Marge Walker, Donald Poust, Christine Snyder, and Margaret Czarnik were dismissed from this action by stipulation, and Anna Czykora[2] was dismissed by court order on March 19, 2013.

On July 11, 2013, First Liberty filed this motion for summary judgment. Walker filed a response opposing summary judgment on July 31, 2013, and First Liberty replied on August 5, 2013.

**B. Factual Background**

Neshaminy Hills was a summer camp retreat that grew like Topsy into an unconventional development of permanent residences. The land, consisting of seventy-three individual lots, is owned by Neshaminy Hills, and leased to its members through long-term leaseholds. (Franklin Dep. 10:3-11:15.) Ownership is, therefore, limited to the structure built on the land and does not pass through ordinary title, with boundaries clearly defined. (Franklin Dep. 75:25-76:16, 121:24-25.) Rather, the seller stands on the property and gestures "like the referee in a football game," pointing out the approximate property boundaries. (Franklin Dep. 77:5-21, 91:3-16.) Because of the informal development of the camp, many of the properties are landlocked, requiring the leaseholders to cross over each others' property to access their homes. (Franklin Dep. 73:21-25.)

In October 2004, the Franklins leased lot 53 from Neshaminy Hills and purchased the house located on the lot from James and Holly Hunt. (Franklin Dep. 10:3-9.) The description of the leased property was simply: "Camp Site No. 53 located on what is known as the Camping Ground indicated on 'Map' showing property of Neshaminy Hills Camp Association, Lower

---

[2] Throughout the record, Anna Czykora is also referred to as Anna Czikora. This memorandum adopts the spelling as listed on the court docket.

2

Southampton Township, Bucks County, Pennsylvania." (Am. Compl. Ex. C, Franklin Lease.) At the time the Franklins leased their lot, there was a bridge over a stream that accessed a patch of land shared by lot 53, and the adjoining lot 54. (Franklin Dep. 11:16-18.) At all times relevant hereto lot 54 was leased by Walker. (Walker Dep. 11:16-25.) For the twelve years he leased lot 53, prior to transferring his leasehold to the Franklins, James Hunt drove over this bridge and driveway, directly to his home. (Am. Compl. Ex. D, Hunt Statement.) When they leased lot 53, the Franklins believed they too would be permitted to drive over the bridge and driveway directly to their home. (Franklin Dep. 11:7-12:21.) And for three and a half years after leasing lot 53, the Franklins drove, without incident, across the bridge, and over the driveway that led directly to their leased property. (Franklin Dep. 12:7-10.) They also parked their car on this driveway, again without incident. (Franklin Dep. 12:7-10.) Prior to leasing lot 53, the Franklins never learned the legal boundaries of the lot, nor did they ever officially inquire about their right to drive over the bridge or the driveway to their property. (Franklin Dep. 12:22-13:10.)

During these three and a half years, the Franklins also made various improvements to the leased property, including the driveway. (Franklin Dep. 63:21-64:5.) They leveled off the land to create a flat surface, installed two stone benches, constructed stone steps to more easily navigate a steep incline, adorned those steps with an artistic hand railing, and landscaped the property around the driveway. (Franklin Dep. 63:21-65:10.) The collective improvements cost an estimated $20,000. (Franklin Dep. 63:17-20.) As per the Neshaminy Hills bylaws, prior to making these improvements, the Franklins secured permission from the association. (Am. Compl. Ex. C, 5/31/07 letter from the Franklins to Don Poust.)

Sometime after the Franklins completed the improvements to the property, a survey was conducted to learn the boundaries of the Franklins' property. (Am. Compl. Ex. C., 8/22/07 memorandum from Frank Forant to Stanton C. Kelton.) The Franklins' property sat between lot 54, Walker's lot, and a second lot leased by Anna Czykora. The survey determined that the driveway leading from the bridge to the Franklins' home ran across Walker's property. (Franklin Dep. 114:10-16.) The survey also showed that the large stone steps the Franklins installed, with the accompanying hand railing, were partially on Czykora's property. (Franklin Dep. 21:19-22:6, 70:4-72:18.)

Thereafter, Neshaminy Hills voted to permit Walker to landscape her property "anyway [she] wanted to keep [the Franklins] from accessing [the driveway]." (Walker Dep. 42:12-16; Am. Compl. Ex. C, 3/22/09 letter from Chistina Snyder to the Franklins.) Acting on this permission, Walker, with other members of Neshaminy Hills, used heavy "machinery" to place two large boulders across the bridge, eliminating vehicle access across the bridge to the driveway. (Walker Dep. 42:22-44:24; Franklin Dep. 61:13-62:13.) By letter dated June 5, 2009, Neshaminy Hills also informed the Franklins that Anna Czykora requested and had been granted permission to, among other things, "remove walkway/steps built by the Franklins from her lot" and "remove rusty metal artwork put in place by the Franklins that is on Anna's lot." (Am. Compl. Ex. C., 6/5/09 letter from Tina Davis to the Franklins.) Thereafter, unknown persons removed the part of the stone steps and accompanying artistic hand-railing that were on Czykora's property, as permitted by the Neshaminy Hills letter, and placed the items on the Franklins' property. (Franklin Dep. 32:2-34:19, 62:21-66:10.)

In response to these acts, the Franklins filed two separate actions in the Bucks County

Court of Common Pleas. (Am. Compl. Ex. C.) The first was filed on September 1, 2009, an amended complaint was filed on October 20, 2009, and a second amended complaint was filed on January 26, 2010. (Pl.'s Mot. Summ. J. Ex. E). This second amended complaint alleged that the Franklins leased lot 53 with a "prescriptive access easement." (Bucks County Second Amend. Compl. (hereinafter "Bucks Compl.") ¶ 3.) It further alleged that, after the Franklins completed the approved improvements as described above, Neshaminy Hills "then voted to remove the improvements." (Bucks Compl. ¶ 6.) Thereafter, various named defendants "barricaded [the Franklins'] access easement with boulders" and "used a chain to prohibit [the Franklins] from using their access easement." (Bucks Compl. ¶¶ 8-9.) Finally, the complaint alleges that some of the defendants "have harassed and intimidated [the Franklins] by using harassing and anti-Semitic language, as well as verbal and physical intimidation." (Bucks Compl. ¶ 10.)

With regard to Walker, specifically, the complaint alleges three separate counts for invasion of privacy (Count X), private nuisance (Count XI) and punitive damages (Count XII). (Bucks Compl. ¶ 74-85.) Count X alleges that Walker "invaded [the Franklins'] privacy by trespassing onto [the Franklins'] property and damaging landscaping, the outdoor stairway and ancillary amenities." (Bucks Compl. ¶ 75.) It further alleges that Walker's acts constitute an "intentional interference" with the Franklins' quiet enjoyment of their home. (Bucks Compl. ¶ 76.) Count XI alleges that Walker "interfered with [the Franklins'] property by trespassing" onto the property "and damaging landscaping, the outdoor stairway and ancillary amenities." (Bucks Compl. ¶ 79.) Count XI further alleges that Walker "intentionally and unreasonably, or negligently or recklessly engaged in abnormally dangerous conduct" by blocking the Franklins'

5

access to the driveway, because the blocked driveway could create a "safety hazard" in the event that "an emergency situation occurs." (Bucks Compl. ¶¶ 80-81.) Count XII alleges that Walker's conduct was "reckless and/or outrageous" rising to the "level required to seek punitive damages." (Bucks Compl. ¶ 85.)

The Franklins filed a separate action on March 25, 2010 against Walker and various members of Neshaminy Hills, requesting an injunction requiring the removal of the boulders barricading the driveway and that the driveway be returned to its pre-existing condition. (Am. Compl. Ex. D.) Both actions were consolidated on September 3, 2010. (Pl.'s Mot. Summ. J. Ex. E.) The actions are pending.

In response to the Franklins' complaints, Walker filed a claim with her homeowner's insurance provider, First Liberty. Following Walker's insurance claim, First Liberty retained defense counsel for Walker throughout the initial discovery phase. (Pl.'s Mot. Summ. J. ¶ 21.) Walker's insurance policy with First Liberty provided in relevant part:

SECTION II – LIABILITY COVERAGES

COVERAGE E – Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of ... "property damage" caused by an "occurrence" to which the coverage applies, we will:

> 1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and
>
> 2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

SECTION II - EXCLUSIONS

1. Coverage E – Personal Liability ... do[es] not apply to ... "property damage":

a. Which is expected or intended by the "insured," even if the resulting ... "property damage"
(1) is of a different kind, quality, or degree than initially expected or intended; or
(2) is sustained by a different person, entity, real or personal property, than initially expected or intended.

The following relevant terms are defined in the policy:

"[Y]ou" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household.

(3) "Insured" means you and residents of your household who are:
(a) Your relatives; or
(b) Other persons under the age of 21 and in the care of any person named above

(5) "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
(a) "Bodily injury"; or
(b) "Property damage."

(6) "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

(Am. Compl. Ex. A).

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To establish that there is, or is not, a genuine dispute as to any material fact, a party may rely on "depositions, documents, electronically stored information, affidavits or declarations (including those made for purposes of the motion only), admissions, interrogatory

answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). "Material facts are those that could affect the outcome of the proceeding, and a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Roth v. Norfalco, LLC*, 651 F.3d 367, 373 (3d Cir. 2011) (internal quotation marks omitted). Thus, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587 (quoting *First Nat'l Bank of Ariz. V. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

"In evaluating the motion, 'the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 772 (3d Cir. 2013) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). "Summary judgment may not be granted...if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Ideal Dairy Farms, Inc. v. John Labatt*, Ltd., 90 F.3d 737, 744 (3d Cir. 1996) (internal quotation marks and citations omitted). "[A]n inference based upon a speculation or conjecture," however, "does not create a material factual dispute sufficient to defeat entry of summary judgment." *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n. 12 (3d Cir. 1990).

**III. DISCUSSION**

In its motion for summary judgment, First Liberty argues that there is no genuine issue regarding its lack of duty to defend and indemnify Walker because the acts alleged in the underlying complaint are non-accidental, and intentional, and therefore not covered by the terms of the policy. Walker objects and claims that a jury must decide the factual issue of whether the property damage alleged was intentional or accidental. I find that summary judgment is appropriate, and First Liberty no longer has a duty to defend or indemnify Walker in litigation based on the Franklins' Bucks County claims.

**A.**

"Under Pennsylvania law...the 'interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court." *Gardner v. State Farm Fire and Cas. Co.*, 544 F.3d 553, 558 (3d Cir. 2008) (quoting *Donegal Mut. Ins. Co. V. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007)).[3] "When the language of the policy is clear and unambiguous, [a court] must give effect to the language." *Id.* (internal quotation marks omitted). When a provision in the policy is ambiguous, a court must construe in favor of the insured, and against the insurer. *Id.*

"An insurer's duty to defend an insured arises 'whenever the complaint filed by the injured party may potentially come within the policy's coverage.'" *Diamond State Ins. Co. v. Ranger Ins. Co.*, 47 F. Supp. 579, 583 (E.D. Pa. 1999) (quoting *Pacific Indem. Co. v. Linn*, 766 F.2d 754, 760 (3d Cir. 1985)). "The burden is on the insured to establish coverage under an insurance policy." *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206 (3d Cir. 2001). The

---

[3] The parties agree that Pennsylvania law governs the insurance policy.

facts alleged in the underlying complaint, and not the cause of action pled, determines whether there is coverage. *Travelers Property Casualt Co. of America v. Mericle*, 486 Fed. Appx. 233, 235 (3d Cir. 2012) (citing *Donegal*, 893 A.2d at 811). *See also Agora Syndicate, Inc. v. Levin*, 977 F. Supp. 713, 715 (E.D. Pa. 1997) ("[I]f the factual allegations of the complaint sound in intentional tort, arbitrary use of the word 'negligence' will not trigger an insurer's duty to defend").

"The duty to defend is triggered even if the complaint against the insured is groundless, false, or fraudulent." *Id.* (citing *Am. States Ins. Co. v. State Auto Ins. Co.*, 721 A.2d 56, 59 (Pa. Super. Ct. 1998)). "If the factual allegations of the complaint, taken as true and construed liberally, state a claim to which the policy potentially applies, the insurer must defend, unless and until it can narrow the claim to a recovery that the policy does not cover." *Sphere Drake, P.L.C. v. 101 Variety, Inc.*, 35 F. Supp. 2d 421, 427 (E.D. Pa. 1999) (citing *Cadwallader v. New Amsterdam Cas. Co.*, 152 A.2d 484, 488 (Pa. 1959)). "Because the duty to defend is broader than the duty to indemnify, there is no duty to indemnify if there is no duty to defend." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 225 (3d Cir. 2005).

**B.**

Under the terms of the instant policy, First Liberty must defend and indemnify for any suits brought against Walker for "property damage" caused by an "occurrence." (Am. Compl. Ex. A). An occurrence is defined in the policy as "an accident," and accident is not defined. (Am. Compl. Ex. A). The Pennsylvania Supreme Court has previously interpreted identical language, establishing that "the term 'accident' within insurance policies refers to an unexpected and undesirable event occurring unintentionally." *Donegal*, 938 A.2d at 292 (citing *Kvaerner*

*Metals Div. of Kvaerner U.S., Inc.*, 908 A.2d 888, 898 (Pa. 2004)). The court emphasized that "the key term in the definition of the 'accident' is 'unexpected' which implies a degree of fortuity." *Id.* "An injury therefore is not 'accidental' if the injury was the natural and expected result of the insured's actions." *Id.* (citing *Lower Paxton Twp. V. U.S. Fidelity and Guar Co.*, 557 A.2d 393, 398 (Pa. 1989)). An intentional act may, nonetheless, be accidental, with regard to the insured, if the intentional act by the insured or a third party resulted from the insured's negligence. *See Donegal*, 938 A.2d at 292 (finding a duty to defend the insured against claims that insured's negligence precipitated the third party's intentional, harmful act); *State Farm and Casualty Co. v. DeCoster*, 67 A.3d 40, 47 (Pa. Super. 2013) (finding a duty to defend the insured against claims that the insured's intentional act arose from his own negligent "mistake of fact").

Walker argues that genuine issues of fact remain as to whether the claims alleged in the underlying complaint were caused by non-accidental, or intentional acts. (Def.'s Mem. Law.[4]) The three instances of property damage at issue, as narrowed by discovery, consist of: (1) the removal of the Franklins' stone steps, (2) the removal of the Franklins' artistic railing, and (3) the installation of boulders blocking the Franklins' access to the driveway between the bridge and their home. (Pl.'s Mem. Law 6-9.) In his deposition, Alan Franklin stated that only the stone steps that were on Czykora's property were removed and then neatly stacked to the side of his driveway. (Franklin Dep. 32:2-34:19, 62:21-66:10.) And, again, only the portion of the accompanying railing that crossed onto Czykora's property was removed and laid on the side of his driveway. (Franklin Dep. 32:2-34:19, 62:21-66:10.) Finally, both Alan Franklin and Walker stated in their depositions that the boulders blocking the Franklins' access were lifted by crane

---

[4] Defendant's Memorandum of Law in Support of Her Opposition to Summary Judgment is not paginated. Accordingly, all citations will be to the document, generally.

and placed in the path of the driveway. (Walker Dep. 42:22-44:24; Franklin Dep. 61:13-62:13.) Walker does not refute these facts. Rather, she argues that concluding from these facts that the acts were "'designed and premeditated,'" or intentional, requires an improper speculation that defeats summary judgment. (Def.'s Mem. Law.)

Such a conclusion, however, does not require the sort of speculation that Walker argues should be left to a fact-finder. Boulders suddenly appearing to block a driveway, and large stone steps, with accompanying handrail, being carefully removed from one property and placed onto another property cannot be accidental. Boulders do not inexplicably spring from the ground, and large stones do not accidentally disappear from one property only to reappear, neatly stacked, on another property. Such events can only occur by design, through intentional acts. To raise a genuine issue of fact Walker must do more than raise "metaphysical doubt" as to whether the careful placement of large boulders and the removal of large stone steps can be accomplished by anything other than intentional acts. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Walker has failed to do so.

Walker also argues that the property damage was accidental, and therefore an occurrence under the terms of the insurance policy, because "[i]t is not a natural and expected result that Walker's landscaping of her property in a certain way would cause damage to the Franklins or their property." (Def.'s Mem. Law.) This argument is also unavailing. Although the Pennsylvania Superior Court has recently found that an insurer had a duty to defend when its insured's intentional act arose from a "mistake of fact," the decision also noted that the underlying complaint alleged the insured's negligence caused the mistake of fact. *State Farm*, 67 A.3d at 47. Walker may have been acting under a mistake of fact, regarding her right to exclude

the Franklins from accessing the driveway, when she intentionally acted to block the driveway; however, the underlying complaints of the Franklins do not allege that it was Walker's negligence that precipitated the act.[5] I am unaware of any Pennsylvania case that finds a duty to defend for an intentional act, arising from a mistake of fact, absent an allegation of the insured's negligence, and I decline to expand Pennsylvania insurance law accordingly.

Because no reasonable jury could find that the acts alleged in the underlying complaints are accidental, and the underlying complaints do not allege that Walker's negligence precipitated the intentional acts, the intentional acts cannot be occurrences under the terms of Walker's insurance policy. Accordingly, the underlying complaints do not state a claim that could potentially fall within the coverage of Walker's insurance policy, and First Liberty has no duty to defend, and therefore no duty to indemnify Walker.

## IV. CONCLUSION

For the forgoing reasons, First Liberty's motion for summary judgment will be granted. An appropriate order follows.

---

[5] While Count XI in the Franklins' second amended complaint does allege that Walker "intentionally and unreasonably, or negligently or recklessly engaged in abnormally dangerous conduct," the actual "factual allegations" in Franklins' complaint "sound in intentional tort." *Agora Syndicate*, 977 F. Supp. at 715. The complaint alleges that the defendants "harassed and intimidated" the Franklins, "barricad[ing]" the driveway with boulders and chains, to "prohibit [the Franklins] from using their access easement." (Bucks Compl. ¶¶ 8-10.) It further notes an anti-Semitic flavor to the attempts at intimidation and harassment. (Bucks Compl. ¶ 10.) Despite the "arbitrary use of the word 'negligence,'" the underlying complaint does not allege that Walker, somehow, negligently participated in these intentional attempts at harassment. *Agora Syndicate*, 977 F. Supp. at 715 ("Arbitrary use of the word 'negligence' will not trigger an insurer's duty to defend").